354

SANDRA ALMANZA, Indiv. and as Adm'r of the Estate of Reyes Almanza, Deceased, Plaintiff-Appellant, *v.* THOMAS AUSTINO, d/b/a Tom & Barb's Tap, *et al.*, Defendants-Appellees.

Third District   No. 79-2

Opinion filed April 29, 1980.

Gerald Drendel and Edward Kelly, both of Streator, for appellant.

Robert M. Hansen, of Herbolsheimer, Lannon, Henson & Duncan, of La Salle, for appellees.

Mr. JUSTICE STOUDER delivered the opinion of the court:

This is an appeal from a judgment of the circuit court of La Salle County in favor of plaintiff-appellant Sandra Almanza, administrator of the estate of Reyes Almanza, and against the defendants-appellees Thomas Austino and Anthony Yanello. This action arose out of a complaint filed under the Dramshop Act (Ill. Rev. Stat. 1977, ch. 43, par. 135) alleging that the wife and child of Reyes Almanza, as well as two other children of Sandra Almanza, suffered a loss of means of support because of his death which was a direct and proximate result of his intoxication which was caused by his being sold or given liquor in a dramshop owned and operated by Austino and located in a building owned by Yanello.

At trial the evidence was that on the evening of December 31, 1975, decedent Reyes Almanza went to Tom & Barb's Tap in Streator, Illinois. Almanza purchased and consumed at least six or seven 12-ounce bottles of Budweiser before leaving the tavern shortly after 12 a.m. Sandra Almanza, Reyes' wife, worked as a bartender at the tavern, and she and another bartender sold Reyes the beer. She and other witnesses testified that Reyes was intoxicated when he left the tavern. After leaving the tavern, while still intoxicated, Reyes drove to the mobile home of Darlene Turner. Darlene was living with her ex-husband, Kenneth Turner, and had been having an affair with Reyes. She was pregnant at the time of the incident and one month later gave birth to a daughter who was Reyes' child. Kenneth Turner had seen a car turn in toward the mobile home, gotten dressed, and taken a gun from a closet. Reyes had entered the hallway of the home when Kenneth saw him and they confronted each other. They fought and ended up on the floor with Kenneth on top of Reyes. He let Reyes up and, then, according to Kenneth's testimony, Reyes lunged at him and Kenneth pulled his gun and shot Reyes.

At the time of Reyes Almanza's death he was 28 and married to Sandra. One child, Reyna, was born of that marriage. Sandra Almanza had two other children by a prior relationship, Robert Garcia and Kelly Jo Garcia. At the time of his death, Reyes lived with Sandra and the three children. Reyes had worked at Owens-Illinois for almost two years. His work there was continuous and in the year preceding his death he had made $12,992.70. Other family income was approximately $40 to $45 per week from Sandra's bartender income, $120 per month from Illinois Department of Public Aid for the Garcia children and $40 per week paid to the Almanzas by two people who boarded in their home. Reyes also had two other children, and he contributed to their support.

The jury returned a verdict against defendant for the plaintiff. Damages were assessed by the jury at $5,000 and were apportioned to

Reyna Almanza alone. No damages were apportioned to Sandra or the Garcia children. Post-trial motions were filed by both parties and were denied. Plaintiff-appellant appeals, raising two issues: (1) whether the damages awarded are grossly inadequate; and (2) whether the plaintiff is entitled to a new trial on the issue of damages alone. Defendant-appellee appeals raising the issue of whether the judgment entered on the verdict in favor of Reyna Almanza was contrary to the manifest weight of the evidence. We reverse and remand for a new trial on the issue of liability as well as damages.

Appellant's first issue is whether the damages awarded are so inadequate as to require overturning the jury's verdict. We believe that they are. Under the Dramshop Act, any person who is injured in means of support in consequence of the intoxication of a person may bring an action for damages. (Ill. Rev. Stat. 1977, ch. 43, par. 135.) The jury was given Illinois Pattern Jury Instruction, Civil, No. 150.14 (2d ed. 1971) which states that " 'means of support' includes the necessities of life, and comforts as well. Whatever lessens or impairs the ability to supply suitable comforts which might reasonably be expected from the person who furnished support, considering his occupation and capacity for earning money, may be regarded as lessening or impairing the 'means of support' referred to in these instructions."

■■ The jury verdict awarded a total of $5,000, all of which was apportioned to Reyna Almanza, and none to Sandra Almanza or the Garcia children. We need not consider the manner in which the jury apportioned the damages because the total award is clearly inadequate. At the time of his death Reyes Almanza was 28, in good health, continuously employed and had in the previous year earned almost $13,000. While the verdict should be examined with deference to the jury's determination (*Wanner v. Keenan* (1974), 22 Ill. App. 3d 930, 317 N.E.2d 114), it is clear that under these circumstances an award of $5,000 was inadequate. Reyes' income allowed him and Sandra to buy a house, and most of his paycheck went to the family. These comforts and necessities constitute means of support. Given the youth of the child, the health and income and youth of her father, and the support he had already given her, we believe Reyna suffered more than $5,000 in damages. It is also clear that five-year-old Robert Garcia and two-year-old Kelly Joe Garcia derived some means of support from living with Reyes in addition to the $120 per month received from Public Aid. They lived in his house and were fed and clothed by the Almanzas. Clearly it cost more than $120 a month to provide for these two young children. Therefore, it is clear that awarding them no money was inadequate.

With regard to Sandra Almanza things are slightly more complicated. The jury verdict form was a general verdict for liability against the

defendants and in favor of the plaintiff. It is clear that if the defendants were liable to Sandra then she must have suffered a loss of means of support and an award of $0 is inadequate. However, it is also possible that the jury decided that there was no liability because she was guilty of complicity.

■■ Under the Dramshop Act, a plaintiff cannot recover unless he is free from complicity. If a person willingly and voluntarily participated to a material and substantial extent in the drinking which led to the intoxication and injury, then he may not recover. (*Thompson v. Tranberg* (1977), 45 Ill. App. 3d 809, 360 N.E.2d 108.) In the instant case, the jury may well have found that Sandra Almanza was guilty of complicity since she is the one who sold her husband the beer. If the jury did in fact determine that Sandra was guilty of complicity, then she would be unable to recover.

■■ However, the jury verdict form simply stated that the jury found for the estate on behalf of all the real parties in interest, including Sandra Almanza. Having found for the estate, the judge finds no damages to Sandra or the Garcia children, only for Reyna. The circumstances of the case, *i.e.*, Sandra's possible complicity, and the verdict rendered make it clear that the jury reached a compromise verdict with no regard to the issues of liability and damages. It is for this reason that we disagree with plaintiff-appellant's second contention; that plaintiff is entitled to a new trial on the issues of damages alone.

The test for a new trial only on the issue of damages was set forth in *Robbins v. Professional Construction Co.* (1978), 72 Ill. 2d 215, 380 N.E.2d 786, in which the court stated that the only time a new trial on the issue of damages only may be granted is where (1) the jury's verdict is amply supported by the evidence; (2) the questions of damages and liability are so separate and distinct that a trial limited to the question of damages is not unfair to the defendant; and (3) the record suggests neither that the jury reached a compromise verdict nor that, in some other identifiable manner, the error which resulted in the jury's awarding inadequate damages also affected its verdict on the question of liability. Since in the instant case the record suggests that the jury reached a compromise verdict, it would be inappropriate to order a new trial on the issue of damages only. Therefore, since the damages are inadequate, we are reversing and remanding for a new trial on the issues of liability and damages.

Defendant-appellee has also appealed the trial court's judgment on the verdict, arguing that it should be reversed because it is against the manifest weight of the evidence. We find no merit in defendant's contention. Defendant argues that Reyes Almanza's intoxication was not the proximate cause of his death. Defendant argues that the shooting was

an independent intervening act of a third party and that the intoxication was not a proximate cause of the injury. In support defendant cites *Danhof v. Osborne* (1957), 11 Ill. 2d 77, 142 N.E.2d 20. We believe that *Danhof* is inapposite to the instant case. In *Danhof*, the intoxicated person was attacked by a jealous husband as he and the attacker's wife left a tavern and walked to his car. The court held that it was not the intoxication which provoked the husband's attack but the fact that the intoxicated man had been having an affair with the attacker's wife, and that the assaults bore no relationship to the intoxication. Therefore, the court held that the intoxication was not a proximate cause of the injury.

In the instant case, the evidence shows that the intoxicated person, Reyes Almanza, sought out the person who killed him, Kenneth Turner, after Reyes became drunk. Reyes drove to Turner's mobile home, entered it and provoked a fight. There was sufficient evidence presented at trial to show that Reyes would not have done this had he not been drunk. Therefore, we cannot hold that the jury's decision that the intoxication was the proximate cause of the injury was against the manifest weight of the evidence.

For the abovementioned reasons, the judgment of the circuit court of La Salle County is reversed and remanded for a new trial generally.

Reversed and remanded.

ALLOY, P. J., and BARRY, J., concur.